**Edward A. LEE, Petitioner–Appellant,**

v.

**Harry K. RUSSELL, Warden, Respondents–Appellee.**

No. 01–3408.

United States Court of Appeals, Sixth Circuit.

Oct. 18, 2002.

Before KRUPANSKY and CLAY, Circuit Judges; GWIN, District Judge *.

---

* The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

CLAY, Circuit Judge.

Petitioner, Edward A. Lee, appeals an order of the district court denying his petition of habeas corpus, pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. Petitioner was convicted in Ohio state court on attempted murder and felonious assault charges. He contends in his federal habeas petition that the state trial court's jury instructions were erroneous in that they had the effect of lowering the state's burden of persuasion on a material element of the offense. For the reasons set forth below, we AFFIRM the order of the district court.

## BACKGROUND

### Procedural History

On October 10, 1996, Petitioner was indicted by the Franklin County grand jury on one count of attempted murder, in violation of OHIO REV.CODE ANN. § 2923.02, and three counts of felonious assault, in violation of OHIO REV.CODE ANN. § 2903.11, with firearm specifications, after he was arrested for shooting his ex-girlfriend, Toia Roberts, and shooting at her current boyfriend, James Ford, and her son, William Roberts. On September 18, 1997, a jury found Petitioner guilty of one count of attempted murder, two counts of felonious assault, and a firearm specification, and he was sentenced to a twenty-nine years of imprisonment.

After pursuing his direct and collateral appeals in the Ohio courts, *see State v. Lee*, No. 97APA12–1629, 1998 WL 614608 (Ohio App. 10 Dist. Sept.3, 1998) (affirming convictions); *State v. Lee*, 84 Ohio St.3d 1470,

704 N.E.2d 578 (Ohio 1999) (denying appeal), Petitioner filed this federal habeas petition on January 19, 2000. The district court referred the petition to a magistrate judge, which issued a report and recommendation on February 15, 2001, recommending that the petition be dismissed. The district court considered the magistrate judge's report and recommendation as well as the Petitioner's objections thereto, and on March 20, 2001, the district court overruled Petitioner's objections and adopted the magistrate judge's report and recommendation. On April 17, 2001, Petitioner filed this timely notice of appeal.

### Facts

The Ohio Court of Appeals set forth the following facts [1]:

> [Petitioner] was indicted on one count of attempted murder and three counts of felonious assault stemming from a September 27, 1996 shooting incident in which Toia Roberts, her boyfriend, James Ford, and her son, William Roberts, were fired upon as they slept in a bedroom at the home of Toia's mother Rosalie Roberts. The time of the shooting was approximately 3:30 a.m. The bedroom was illuminated by light from the adjacent bathroom and from the outside street lamp shining throughout the open bedroom window. Several shots were fired into the room which Toia, James and William were occupying. Empty 9 mm shell cases were found outside the window after the shooting. An estimated six to twelve shots hit Toia. A bullet was found lodged in the bedrail located six inches from the spot where William Roberts rested his head. Another bullet struck a closet door be-

---

1.  In habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are not fairly supported by the record." *Purkett v. Elem*, 514 U.S. 765, 769, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995) (citing 28 U.S.C. § 2254(d)(8)). Because the facts are fairly supported by the record, we recount the facts as stated by the Ohio Court of Appeals.

yond the spot where William and James Ford were positioned.

Toia was able to identify the assailant as [Petitioner]. After police had arrived, a caller telephoned the residence asking for Toia. Rosalie Roberts spoke with the caller and identified him as [Petitioner]. The phone call was traced to a public telephone booth nearby and the officer dispensed to investigate identified a car, a black Camaro, leaving the scene. The black Camaro was found abandoned in an apartment complex and identified as belonging to [Petitioner]'s sister, Ophelia Lynn Lee. Ms. Lee testified that [Petitioner] had borrowed the car earlier and had not returned it. A witness testified that she had seen a black car driving up and down the street near Rosalie Roberts' house the evening of the shooting. Another witness that he saw a black Camaro leaving the area a short time after the shooting occurred.

*Lee,* 1998 WL 614608 at *1.

## DISCUSSION

Because Petitioner filed his federal habeas petition after the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") took effect, that statute's provisions govern our review of this matter. *Penry v. Johnson,* 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). Pursuant to AEDPA, we review the district court's legal conclusions *de novo* and its factual findings for clear error. *Moss v. Hofbauer,* 286 F.3d 851, 858 (6th Cir.2002). However, we may not grant the writ of habeas corpus unless the state court judgment with respect to the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The "contrary to" and "unreasonable application" clauses in § 2254(d)(1) have independent meanings. *Penry,* 532 U.S. at 792, 121 S.Ct. 1910 (citing *Williams v. Taylor,* 529 U.S. 362, 404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). State court decisions are contrary to clearly established precedent if the state court applied a rule that contradicts the governing law set forth in Supreme Court cases or involves a set of facts that are materially indistinguishable from prior Supreme Court authority and the state court nevertheless reaches a result that differs from that prior authority. *Id.* at 792, 121 S.Ct. 1910.

State court decisions constitute an unreasonable application of clearly established Supreme Court authority if a state court decision correctly identifies the proper legal rule but applies it unreasonably to the facts of a particular case. *Id.* The Supreme Court has made clear that in conducting a review under the unreasonable application prong, courts should inquire "whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 793, 121 S.Ct. 1910. Further, there is a difference between an "unreasonable" and an "incorrect" application of federal law. *Id.* Thus, "even if the federal habeas court concludes that the state court decision applied clearly established law incorrectly, relief is appropriate only if that application is also objectively unreasonable." *Id.*

Petitioner challenges the instructions surrounding his conviction for felonious assault. He contends that the state trial court gave a misleading jury instruction that lowered the state's burden of persua-

sion on a material element of the offense. The statute at issue provides:

(A) No person shall knowingly:

(1) Cause serious physical harm to another;

(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordinance, as defined in section 2923.11 of the Revised Code.

OHIO REV.CODE ANN. § 2903.11(A)(1)-(2) (Anderson 1996).

Further, in defining what constitutes a knowing act, the Ohio Revised Code states:

[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

OHIO REV.CODE ANN. § 2901.22.

In rendering jury instructions regarding Petitioner's felonious assault charge, the trial court told the jury:

Before you can find [Petitioner] guilty of felonious assault as charged in count two of the indictment you must find beyond a reasonable doubt that … [Petitioner] knowingly caused physical harm to Toia Roberts and/or caused or attempted to cause physical harm to Toia Roberts by means of a deadly weapon.

Before you can find [Petitioner] guilty of felonious assault as charged in count three of the indictment, you must find beyond a reasonable doubt that … [Petitioner] knowingly caused or attempted to cause physical harm to William Roberts by means of a deadly weapon.

Before you can find [Petitioner] guilty of felonious assault as charged in court [sic] four of the indictment, you must

find beyond a reasonable doubt that … [Petitioner] knowingly caused or attempted to cause physical harm to James Ford by means of a deadly weapon.

A person acts knowingly regardless of purpose when that person is aware that the conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when that person is aware that such circumstances probably exists. Since you cannot look into the mind of another, you must determine knowledge from all facts and circumstances in evidence.

A criminal attempt is when one knowingly does anything which is an act constituting a substantial step in a course of conduct which is planned to culminate in his commission of the crime. To constitute substantial step, the conduct must be strongly corroborative of the actor's criminal purpose.

Cause is an act in which the natural and continuous sequence directly produces the injury and without which it would not have occurred. Cause occurs when the injury is the natural and foreseeable result of the act.

The General Assembly has defined felonious assault in terms of harm or potential harm visited upon another. There is a separate and dissimilar import with respect to each person subject to that harm or risk of harm.

A defendant can be convicted of felonious assault if the victim, although not actually struck and injured, is subject to a significant possibility of being physically harmed.

Shooting a gun in a place where one or more persons risks injury supports an inference that you may but are not required to make that [Petitioner] acted knowingly. You must consider the total-

ity of all the evidence and the circumstances at the time.

(J.A. at 157–60.)

Petitioner contends that the final two paragraphs, read together, led the jury to believe that a person's proximity to a shooting may be sufficient to support a finding of guilt even without proof that the shooter knew others were present. He argues that the instructions allowed the jury to draw an inference that because Ford and William were subjected to a significant possibility of being physically harmed, then Petitioner *must have known* of their presence.

The Fourteenth Amendment's due process clause protects an accused against conviction except upon proof beyond a reasonable doubt as to each fact necessary to constitute the crime for which a defendant has been charged. *Francis v. Franklin,* 471 U.S. 307, 313, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) (citing *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). The state is therefore barred from using evidentiary presumptions that relieve the state of the burden of persuasion beyond a reasonable doubt on the crime's essential elements. *Id.* In conducting an inquiry into a presumptive jury instruction, a court must ascertain whether the "challenged portion of the instruction creates a mandatory presumption . . . or merely a permissive inference." *Id.* at 314, 105 S.Ct. 1965. "A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. . . . A permissive inference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but *does not require* the jury to draw the conclusion." *Id.* (emphasis added). While a mandatory presumption violates a defendant's rights under the due process clause, a permissive inference violates it only when the conclu-

sion suggested by the permissive inference "is not one that reason and common sense justify in light of the proven facts before the jury." *Id.* at 314–15, 105 S.Ct. 1965.

Petitioner contends that the jury instruction's presumption fails the test as outlined in *Leary v. United States,* 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). In *Leary,* the statute at issue made it illegal for a defendant to knowingly import marijuana into the United States. *Id.* at 30, 89 S.Ct. 1532. The statute also included a presumption, which authorized a jury to infer from the defendant's possession of marijuana that the marijuana was imported into the United States illegally and that the defendant knew of the unlawful importation. *Id.* at 37, 89 S.Ct. 1532. The Court held that the connection between the proved fact (possession) and the presumed fact (unlawful importation and knowledge of same) was not rational, and therefore the statute's presumption was unconstitutional. *Id.* Petitioner contends that *Leary* controls here because there is no rational connection between the proved fact (the presence of Ford and William in the bedroom) and the ultimate fact presumed (Petitioner's knowledge of their presence).

We disagree with Petitioner's characterization of the jury instructions. The Supreme Court has explained that

> [w]hen reviewing [a permissible inference], the Court has required the party challenging it to demonstrate its invalidity as applied to him. Because this permissive presumption leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.

*County Court of Ulster County, N.Y. v. Allen,* 442 U.S. 140, 157, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979). Therefore, we look to the evidence adduced at trial to determine whether a rational trier of fact could make the inference.

In addressing Petitioner's assignments of error, the Ohio Court of Appeals reiterated the definition of felonious assault, which is knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordinance. The court further noted that "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." (J.A. at 111 (citing OHIO REV.CODE ANN. § 2901.22(B)).) Determining that the jury instruction was a permissible inference, and not a mandatory presumption, the court then recounted the evidence at trial supporting the inference that Petitioner knowingly caused or attempted to harm to the occupants inside the bedroom, including the following: (1) shots were fired into or in the direction of each of the three persons in the bedroom; (2) according to testimony at trial, the light in the bedroom was sufficient to permit Petitioner to see the persons inside the bedroom; and (3) slugs were found imbedded in the bed and closet near where William and Ford were lying.

We agree that the jury instruction was no more than a permissible inference. Moreover, based on the facts as outlined by the Ohio Court of Appeals' opinion, the jury could have inferred that Petitioner saw that Ford and William were in the room when he shot into the room, particularly because sufficient light was in the room and bullets narrowly missed William and Ford. Because we find that sufficient

evidence existed upon which to find a rational relationship between the established facts and the inference made therefrom, *see Ulster County Court,* 442 U.S. at 157, 99 S.Ct. 2213, the state court did not unreasonably apply Supreme Court precedent in finding the permissible inference constitutional.

Our view is not changed by the preceding instruction ("A defendant can be convicted of felonious assault if the victim, although not actually struck and injured, is subject to a significant possibility of being physically harmed."). Contrary to Petitioner's argument, this sentence does not instruct the jury that Petitioner did not have to know that the intended victims were in the residence. No presumption, permissive or mandatory, is set out in this sentence. Therefore, this argument lacks merit.

Moreover, the Supreme Court has instructed that "[i]f a specific portion of the jury charge, considered in isolation, could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense, the potentially offending words must be considered in the context of the charge as a whole." *Franklin,* 471 U.S. at 315, 105 S.Ct. 1965. The jury instructions repeatedly emphasized that the jury had to find, beyond a reasonable doubt, that Petitioner knew William and Ford were present. We believe that the instructions when read as a whole only allow for a permissive inference. Petitioner has failed to show that under the facts of the case, there was no rational way a trier of fact could make the connection permitted by the inference.[2] Therefore, the inference is valid.

**2.** Even if the instruction could somehow be construed as a presumption unsupported by the basic facts proven by the state, such error

would be harmless. The Supreme Court has held that we must inquire whether an "ailing" jury instruction "so infected the entire

We conclude that the state court's jury instruction did not permit the jury to find that Petitioner was guilty of the felonious assault of William and Ford without first finding that Petitioner knew they were in the room. To the extent the jury was told that it could draw an inference regarding Petitioner's knowledge that William and Ford were in the room, such an inference was permissive and constitutional.

## CONCLUSION

For the foregoing reasons, we AFFIRM the order of the district court.

trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Further, in habeas proceedings, "a federal court may grant habeas relief based on trial error only when that error had substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman* 525 U.S. 141, 145, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (quoting *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353(1993)). On this record, we conclude that the instruction had no such effect on the trial or the jury's verdict.