**Stephen HO, Petitioner–Appellant,**

v.

**Thomas L. CAREY,\* Warden; Attorney General of the State of California, Respondents–Appellees.**

No. 01–16823.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2003.

Filed June 5, 2003.

---

\* Thomas L. Carey is substituted for his predecessor Anthony Newland as Warden of Solano State Prison. Fed. R.App. P. 43(c)(2).

Dennis P. Riordan and Donald M. Horgan, Riordan & Rosenthal, San Francisco, CA; Marc Zilversmit, San Francisco, CA, for the petitioner-appellant.

Mark S. Howell, Deputy Attorney General of the State of California, San Francisco, CA, for the respondents-appellees.

Before HUG, ALARCÓN, and GRABER, Circuit Judges.

Opinion by Judge ALARCÓN; Dissent by Judge HUG.

### ORDER AND OPINION

#### ORDER

The Opinion filed February 26, 2003, slip op. 2575, and appearing at 322 F.3d 625 (9th Cir.2003), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit. The Clerk is directed to file the attached opinion and the attached dissent.

The petition for rehearing and petition for rehearing en banc are DENIED as moot. Subsequent petitions for rehearing and rehearing en banc may be filed.

#### OPINION

ALARCÓN, Senior Circuit Judge.

Petitioner Stephen Ho, a California state prisoner, appeals from the denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Ho asserts that he was deprived of his constitutional right to have a jury decide every element of the offense of second-degree murder based on implied malice because the trial

court erroneously instructed the jury that the offense was a general-intent crime. We agree and reverse the district court's denial of the petition.

## I

Ho was convicted of second-degree murder based on implied malice, with an enhancement for the use of a gun. The trial court denied Ho's motion for a new trial and sentenced him to a term of fifteen years to life plus an additional four-year sentencing enhancement for using a gun.

Ho appealed his conviction to the California Court of Appeal ("Court of Appeal"), which affirmed the conviction in an unpublished opinion. Ho's application for a writ of habeas corpus was denied by the Court of Appeal and the California Supreme Court. Ho then filed a petition for a writ of habeas corpus in the District Court for the Northern District of California in which he asserted six federal constitutional claims. The district court denied Ho's petition. It issued a certificate of appealability ("COA") as to only one of Ho's claims. The district court denied Ho's motion for reconsideration of the denial of a COA as to the five rejected claims. A motions panel of this court denied Ho's motion for expansion of the COA. We have jurisdiction to consider this appeal under 28 U.S.C. § 2253.

## II

On April 8, 1994, Ho shot Tommy Chun three times with a .380–caliber semi-automatic pistol at a bar called the Pierce Street Manor. Before that night Ho and Chun were strangers. Ho went to the Pierce Street Manor with his girlfriend Angela Shi, two of her friends, Rose Choi and Dawn Mueller, and several male friends. Jason Gee and Warren Ma, who had a history of conflict with Ho, were at the bar that night. During the course of the evening, Shi, Choi, Mueller and a number of other people played dice with Chun. Gee and Ma sat near the location of the dice game. Ho visited Shi at the dice game three separate times during the night. Mueller testified that, after Ho noticed Ma and Gee, Ho became nervous and concerned. Shi noticed that Ho looked intently at the people around the dice game and exchanged hostile glances with Chun.

Ho testified that he went to the car to get his gun because he was worried by the presence of Gee and Ma. Ho stated that he had the gun in his car because he enjoys target shooting and had previously fired the gun only at a firing range. He testified that he had no intention of using the gun and that he did not want to hurt anybody that evening.

Choi, Mueller and Shi testified that Ho's last visit to the dice game led to an angry verbal exchange between Chun and Ho. There was a physical confrontation and Chun either attempted to hit, or succeeded in hitting, Ho. The confrontation ended when Ho shot Chun three times. Witnesses testified that the shots were fired over a two to five-second period from a relatively close range.

Several witnesses testified that Ho advanced toward Chun as he shot him and that each shot was distinct, that is, that no rapid firing occurred. Two witnesses heard Ho say "fuck you" or "you fuck with me."

Ho testified to a different version of the shooting, however. He stated that after he and Chun exchanged angry words, Chun asked, "You want some[?]" and reached behind his back. Chun was wearing a jacket that could have concealed a weapon. Ho "froze" thinking that Chun was about to pull out a firearm. But Chun brought his hand to the front, opened both

palms and smiled. Ho, thinking the tension had broken, turned back to the bar. A second later, Chun struck Ho on the back of the head. Ho spun around and saw Chun reach behind his back. Ho stated that he was disoriented from the blow and again thought that Chun was reaching for a gun. Ho pulled out his gun and fired three shots at Chun.

## III

The state judge erroneously instructed the jury as follows:

> The crime of murder in the second degree—in the crime charged, murder in the second degree based on implied malice, this instruction applies.
>
> There must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. *When a person intentionally does that which the law declares to be a crime, he or she is acting with general criminal intent* even though he or she may not know his act or conduct is unlawful.
>
> That applies only to murder in the second degree based on the theory of implied malice, and I'll write that down in the form for you.

(Emphasis added.)

After the instructions were read and the jury had left the court room, the prosecutor informed the court that it had erred in instructing the jury that general intent was an element of murder in the second degree based on implied malice. The next day, the trial court gave the following instruction to the jury:

> Lastly, this instruction only applies to involuntary manslaughter. In the crime of involuntary man-slaughter, 192(b) of the Penal Code, there must exist a union

or joint operation of act or conduct and general criminal intent. To constitute general criminal intent, it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he or she is acting with general criminal intent even though he may not know that his act or conduct is unlawful.

The trial court did not inform the jury that it had mistakenly instructed it the previous day that second-degree murder based on implied malice was a general-intent crime.

During closing argument, the prosecutor correctly described the elements of second-degree murder, including the definition of malice. In arguing that the evidence showed that Ho had acted in self-defense, the defense attorney pointed out that "all murder has malice." He told the jury that even an unreasonable belief by Ho that his life was in danger would negate the element of malice.

## IV

■ A writ of habeas corpus may be issued when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3) (2002). A request for federal habeas corpus relief must be based on a violation of federal law. *Id.* § 2254(d). We review de novo a district court's decision to deny a petition filed pursuant to 28 U.S.C. § 2254. *Williams v. Woodford,* 306 F.3d 665, 684 (9th Cir.2002).

The Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. § 1214 (1996) ("AEDPA"), applies to this petition for habeas corpus, because it was filed after April 24, 1996. *Id.* Under AEDPA, a writ may issue only if the state court's ruling "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal

law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ Under the AEDPA we must determine whether the state court's decision was "contrary to or involved an unreasonable application of controlling law under AEDPA." *Lockyer v. Andrade,* — U.S. ——, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003). "[W]hen considering an allegedly erroneous jury instruction in a habeas proceeding, an appellate court first considers whether the error in the challenged instruction, if any, amounted to 'constitutional error.' If so, the court then considers whether the error was harmless." *Morris v. Woodford,* 273 F.3d 826, 833 (9th Cir. 2001) (citing *Calderon v. Coleman,* 525 U.S. 141, 146, 145, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (per curiam)), *cert. denied,* — U.S. ——, 123 S.Ct. 341, 154 L.Ed.2d 248 (2002).

### A.

■ When inquiring whether an ambiguous jury instruction rises to the level of constitutional error we ask whether, "considered in the context of the instructions as a whole and the trial record[,] … 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). If so, we must decide "whether the instruction, so understood, was unconstitutional as applied to the defendant." *Coleman,* 525 U.S. at 147, 119 S.Ct. 500. The general-intent instruction at issue here, however, was not merely ambiguous; it was flatly erroneous. This court is not required to use the "reasonable likelihood" standard

employed for ambiguous jury instructions "when the disputed instruction is erroneous on its face." *Wade v. Calderon,* 29 F.3d 1312, 1321 (9th Cir.1994). When a jury instruction omits a necessary element of the crime, constitutional error has occurred. *Id.*

■ Under California law, to find a defendant guilty of second-degree murder based on implied malice, the jury must find that at the time of the killing the defendant intended to do an act that is dangerous to human life, with the knowledge that the act threatens life, and with a "conscious disregard" of that threat. *See People v. Nieto Benitez,* 4 Cal.4th 91, 13 Cal.Rptr.2d 864, 840 P.2d 969, 975 (1992) (defining second-degree, implied malice murder); Cal.Penal Code § 187 (West 2003) (defining murder); *id.* § 188 (defining express and implied malice); *id.* § 189 (defining second-degree murder based on implied malice). A finding of general intent is not sufficient to convict a defendant of second-degree murder based on implied malice. *People v. Zerillo,* 36 Cal.2d 222, 223 P.2d 223, 229–30 (1950) (holding that it is error to give a general-intent instruction when specific intent is at issue). Therefore, the trial court's instruction was erroneous under California law. The court's erroneous instruction on the elements of murder in the second degree was also constitutional error. *Sandstrom v. Montana,* 442 U.S. 510, 523–24, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (holding that a jury instruction that relieved the State of its burden to prove the element of intent was unconstitutional).

■ In rejecting Ho's contention that the trial court violated his constitutional right by erroneously instructing the jury that a defendant may be found guilty of second-degree murder if the jury is persuaded beyond a reasonable doubt that he

or she acted with general intent, the Court of Appeal stated as follows:

> After further discussion between the trial court and attorneys outside the presence of the jury, the general intent instructions were modified as follows: "Lastly, this instruction only applies to involuntary manslaughter. In the crime of involuntary man-slaughter [section 192, subsection (b)] of the Penal Code, there must exist a union or joint operation of act or conduct and general intent." The written instructions given to the jury included a form copy of CALJIC No. 3.30 (1992 rev.) (concurrence of act and general intent), which stated the instruction only applied to "192b."[1]

The California Court of Appeal did not discuss the fact that the trial court did not, at any time, advise the jury that its instruction that general intent is an element of second-degree murder based on implied malice was erroneous and must be disregarded.

■ We do not view a single instruction in isolation, "but in the context of the overall charge," as required by *United States v. Harrison,* 34 F.3d 886, 889 (9th Cir.1994). We have a grave doubt regarding whether the fact that the jury instructions contained correct and incorrect elements of the crime cured the court's erroneous instruction on general intent in view of the fact that the court did not confess or correct its error.

■ A trial judge is required to explain the law correctly to the jury so that it may "apply the law to the facts," *United States v. Gaudin,* 515 U.S. 506, 514, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), and determine the defendant's guilt as to every element of the crime with which he is charged, *id.* at 510, 115 S.Ct. 2310. *See also Guam v. Marquez,* 963 F.2d 1311, 1314–15 (9th Cir.1992) (holding "that all jury instructions must be read aloud to the jury in the presence of counsel and the defendant"); *Morris v. United States,* 156 F.2d 525, 531 n. 4 (9th Cir.1946) (holding that "[t]he court must directly and not by reference to a document in the jury's possession define the offense charged in clear and precise language"); 2 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 483, at 693–94 (2d ed. 1982) (stating that jury instructions "must be given orally by the judge"). The court's erroneous instruction that general intent is an element of murder in the second degree based on implied malice allowed the jury to convict Ho of second-degree murder based on a finding that he had the general intent to commit the crime. Therefore, the court's failure to instruct the jury properly violated Ho's "historical and constitutionally guaranteed right ... to demand that the jury decide guilt or innocence on every issue," *Gaudin,* 515 U.S. at 513, 115 S.Ct. 2310, and was constitutional error.

Pursuant to 28 U.S.C. § 2254(d)(1), we are required to determine whether the rul-

---

1. The form instruction given to the jury based on CALJIC 3.30 (1992 Revision) reads as follows:

CONCURRENCE OF ACT AND GENERAL CRIMINAL INTENT

In the crime[s] charged in Count[s] 192b, _____, and _____ "[namely, _____, _____, and _____,] [and the crime[s] of _____, _____, _____ which [is a] [are] lesser crime[s]], there must exist a union or joint operation of act or conduct

and general criminal intent." To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, [he] [she] is acting with general criminal intent, even though [he] [she] may not know that [his] [her] act or conduct is unlawful. Contrary to the Court of Appeal's statement, this instruction did not state that general intent instruction "only applied to '192b'."

ings of the California courts "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The ruling of the Court of Appeal involved an unreasonable application of established federal law.

▆ "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer,* 123 S.Ct. at 1174. Therefore, we may reverse a state court's decision as involving an "unreasonable application" of clearly established federal law only if we determine that the state court's "application of clearly established law [is] objectively unreasonable." *Id.*

When reviewing Ho's direct criminal appeal, the Court of Appeal seemed to interpret the erroneous jury instruction as *ambiguous.* The court analyzed the issue under the standard of whether there was a " 'reasonable likelihood' that the jury properly understood [the] law and were the points appellant sought to make at trial adequately covered," *People v. Ho,* No. A074863, at 11 (Cal. Ct.App. June 30, 1998) (citations omitted), which is essentially the same standard for interpreting whether an *ambiguous* jury instruction rises to the level of constitutional error outlined by the Supreme Court in *Estelle,* 502 U.S. at 72, 112 S.Ct. 475. Thus, the Court of Appeal identified correctly the governing legal rule for evaluating the effect of an ambiguous jury instruction. However, the court unreasonably applied the rule to a facially *incorrect* instruction on the elements of the crime of second-degree murder based on implied malice.

▆ The Court of Appeal determined that "[a]ll the standard instructions were given on first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter, reasonable self-

defense and unreasonable self-defense." *Ho,* No. A074863, at 11. The court then reasoned that, because "[t]he necessary mental states were fully defined and general intent was effectively limited to involuntary manslaughter," it was "satisfied that the jury properly understood the governing law and points appellant sought to make at trial." *Id.* at 14. The record shows, however, that the trial judge never informed the jury that the general-intent instruction was erroneous. The fact that the court advised the jury it was to consider the instructions as a whole does not remedy the erroneous and uncorrected instruction that general intent is an element of second-degree murder.

▆ The Court of Appeal also concluded that the arguments of counsel clarified for the jury that it was required to convict Ho of manslaughter if it accepted his argument of self-defense. *Id.* at 13. We must presume that a jury follows the trial court's instructions. *See Francis v. Franklin,* 471 U.S. 307, 324 n. 9, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985) ("The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them."). The arguments of counsel that the jury must find implied malice to convict Ho of second-degree murder were not binding on the jury and could not serve to remedy the court's erroneous general-intent instruction.

[A]rguments of counsel generally carry less weight with a jury than do instructions from the court. The former are usually billed in advance to the jury as matters of argument, not evidence, and are likely viewed as the statements of advocates; the latter, [the Supreme

Court has] often recognized, are viewed as definitive and binding statements of the law.

*Boyde v. California,* 494 U.S. 370, 384, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). At Ho's trial, the judge instructed the jury that "[a]s jurors, you must accept and follow the law as I state it to you whether or not you agree with the law. If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, *you must follow my instructions.*" (Emphasis added.) In light of the trial judge's emphatic instruction to the jury to disregard any argument of counsel that conflicted with his instructions, counsels' comments regarding the elements of the crime of murder in the second degree were not sufficient to correct the constitutional error. Accordingly, it is reasonably likely that the jury convicted Ho of second-degree murder based on implied malice, after finding that he had the general intent to fire his weapon at Chun, notwithstanding the evidence he presented that he acted in self-defense.

Finally, the evidence against Ho was not so overwhelming that it could not have supported a verdict of involuntary or voluntary manslaughter. Ho testified that he believed that he acted in self-defense because his life was in danger and that his conduct was a disoriented and panicked reaction to being hit in the back of the head by Chun. Several witnesses testified that Chun either hit Ho, or made an attempt to do so, and corroborated some other details of Ho's testimony.

We are convinced that, "considered in the context of the instructions as a whole and the trial record[,] ... 'there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violate[d] the Constitution," *Estelle,* 502 U.S. at 72, 112 S.Ct. 475 (citation omitted)

(quoting *Boyde,* 494 U.S. at 380, 110 S.Ct. 1190), and that the California courts' contrary conclusion was "objectively unreasonable," *Lockyer,* 123 S.Ct. at 1174. Therefore, the decisions of the California courts involved an unreasonable application of clearly established federal law.

### B.

In light of our conclusion that the submission of the general-intent instruction to the jury violated due process, we next determine whether that error was harmless. Habeas petitioners are not entitled to relief unless they can establish that the error resulted in "actual prejudice," *United States v. Lane,* 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed.2d 814 (1986), because it had a "substantial and injurious effect or influence in determining the jury's verdict," *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation and internal quotation marks omitted). "If we are in grave doubt as to whether the error had such an effect, the petitioner is entitled to the writ." *Coleman v. Calderon,* 210 F.3d 1047, 1051 (9th Cir.2000).

The trial court read a number of charges to the jury, some of which were correct statements of the law. For example, at one point in the course of the jury instructions, the trial court properly defined implied malice. However, because the court never corrected its erroneous general-intent instruction, the court's instructions also permitted the jury to find that Ho was guilty of second-degree murder even if it found that the evidence merely showed general intent. It has "long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Leary v. United States,* 395 U.S.

6, 31–32, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

In summary, the instruction on second-degree murder based on implied malice was given on one day, while the instruction on involuntary manslaughter was given the next day. Each time, the state trial judge instructed the jury that the general-intent instruction applied "only" to that crime. The judge did not say on the second day that the new instruction replaced the first day's general-intent instruction or that the first day's instruction had been wrong. The most likely inference for a lay juror to have drawn was that the first day's general-intent instruction applied only to murder in the second degree, while the second day's general-intent instruction applied only to involuntary manslaughter.

Further, if the jurors understood the instructions that way, they could have convicted Ho of second-degree murder even if they believed that he acted in self-defense. That is because, under the theory of self-defense, Ho shot Chun intentionally, albeit without believing that his act was unlawful.

Because a jury's deliberations are secret and unreported, we have no way of determining whether, in convicting Ho of second-degree murder, the jury relied on the court's erroneous general-intent instruction or on the correct definition of implied malice. Accordingly, we are left with a grave doubt as to whether Ho was convicted on an unconstitutional theory. We conclude, therefore, that the court's error was prejudicial. We **REVERSE** and **REMAND** this matter to the district court with instructions to grant the writ.

HUG, Circuit Judge, dissenting:

I respectfully dissent.

The Supreme Court recently emphasized and refined the standard under which we review a petition for habeas corpus from a state court conviction. *Lockyer v. Andrade,* —— U.S. ——, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). The Court noted that the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d)(1) (AEDPA) circumscribes a federal habeas court's review of a state-court decision. Section 2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

The Court stated, "[W]e first decide what constitutes 'clearly established federal law as determined by the Supreme Court of the United States.'" *Andrade,* 123 S.Ct. at 1172. The Court further stated that "under the unreasonable application clause the federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this court's decisions, but unreasonably applies that principle to the fact of the prisoner's case." *Id.* at 1174. (quoting from *Williams v. Taylor,* 529 U.S. at 413, 120 S.Ct. 1495). The Court noted that it is not enough that the federal court is left with a firm conviction that the state court was incorrect or erroneous. Rather, that application must be objectively unreasonable. *Id.* at 1175. Furthermore, the Court observed that a finding of clear error is not enough to meet the objectively unreasonable standard. "Under Section 2254(d)(1)'s 'unreasonable application clause,' ..., a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-

court decision applied clearly established federal law erroneously or incorrectly." *Id.* (quoting *Williams v. Taylor,* 529 U.S. at 411, 120 S.Ct. 1495).

In this case, we have a trial judge who gave a correct instruction defining second degree murder. The judge had given an earlier instruction stating that general intent is required for second degree murder. If this were the only instruction given defining second degree murder, I would agree that an important element was left out. But it was not the only instruction, because a later instruction was given that correctly stated all of the elements. Thus, the most that was done by the first instruction was to create ambiguity.[1] *Andrade* states "as a threshold matter we first decide what constitutes 'clearly established Federal law as determined by the Supreme Court of the United States.'" *Andrade,* 123 S.Ct. at 1172. The majority opinion sets forth the clearly established Federal law for an ambiguous instruction as "whether considered in the context of the instructions as a whole and the trial record there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution," citing *Estelle*[2] and *Boyde.*[3]

The trial judge correctly instructed on the elements of second degree murder in the oral instructions, and in the written instructions that were sent to the jury room. The issue before the California Court of Appeal was whether the earlier instruction concerning general criminal intent created such ambiguity in the minds of the jurors as to require reversal. The California Court of Appeal stated:

All the standard instructions were given on first degree murder, second degree murder, voluntary manslaughter, involuntary manslaughter, reasonable self-defense and unreasonable self-defense.

The Court of Appeal then cited those particular instructions that were given by the trial court. The Court of Appeal further stated:

Having ascertained the relevant law, the question before us becomes whether there is a "reasonable likelihood" that the jury properly understood such law and were the points appellant sought to make at trial adequately covered. "In resolving such question we look to the evidence, instructions and arguments of counsel."

(citations omitted). The Court of Appeal then stated:

Regarding general intent, the jury was initially instructed: "In the crime charged, murder in the second degree based on implied malice, this instruction applies.[¶] There must exist a union or joint operation of act or conduct and general intent..... [¶] That applies only to murder in the second degree based on the theory of implied malice, and I'll write that down in the form for you. [¶] ... [¶] In the crime of murder in the second degree, the necessary mental state is malice." (Ellipsis and paragraph designations in original.)

The Court of Appeal then noted that, after discussion with counsel outside the presence of the jury, the general intent instruction was modified to specify that it applied

---

1. Furthermore, with the correct instruction having been given I think the first instruction was not really erroneous. It did not say that *only* general intent was required. Actually, general intent is required for second degree murder, but that offense also requires specific intent.

2. *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

3. *Boyde v. California,* 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

only to involuntary manslaughter and that the written instructions given to the jury so indicated.

After giving the instructions for first degree murder the trial court gave the following instructions concerning the elements of second degree murder.

Murder of the second degree is also the unlawful killing of a human being with malice aforethought when there is manifested an intention unlawfully to kill a human being but the evidence is insufficient to establish deliberation and premeditation.

Murder of the second degree is also the unlawful killing of a human being when:

One, the killing resulted from an intentional act;

Two, the natural consequences of the act are dangerous to human life; and

Three, the act was deliberately performed with knowledge of the danger to and with conscious disregard for human life.

The trial court then gave the instructions concerning the specific elements of voluntary and involuntary manslaughter.

As the Court of Appeal noted, the attorneys for the prosecution and the defense argued the case in terms of these instructions. The prosecutor never argued that the defendant could be found guilty based only on a finding of general intent.

At most the early instruction on general intent, that the majority believes requires a reversal, could only have created some ambiguity concerning the elements of second degree murder that were clearly spelled out in the later instructions. It was never stated that general intent was the *only* element that need be proved.

The Court of Appeal concluded that "The necessary mental states were fully defined and general intent was effectively limited to involuntary manslaughter." It is significant that both the prosecuting attorney and the defense attorney believed this to be true because no further modification of the instructions was requested.

I fail to see how the California court's conclusion is contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court for several reasons: '

1. The instructions read as a whole correctly instructed on the elements of second degree murder.

2. The court clarified the general intent instruction in the written instructions sent to the jury.

3. The attorneys sought no further correction of the instructions as given.

4. The attorneys argued the case on the correct definition of second degree murder. There was no contention that only general intent was required.

5. If the jury were to look at the written instructions there was no doubt about the elements for second degree murder.

The major defect in the majority opinion is that it looks at the general intent instruction as though it was the only instruction given on second degree murder and that it omitted an important element, thus evoking the *Sandstrom* standard.[4] It was not the only instruction on second degree murder. The jury was correctly instructed on the elements of second degree murder in the section of the instructions that defined all possible offenses that could be found. As a practical matter, that is where the jury would turn to decide which offense or degree is applicable—not look back to an

**4.** *Sandstrom v. Montana,* 442 U.S. 510, 99    S.Ct. 2450, 61 L.Ed.2d 39 (1979).

instruction never mentioned in argument. Furthermore, if the jury were to look back to that earlier instruction as it was submitted to the jury in writing, it would see that the instruction did not apply to second degree murder.

Judge Illston, in reviewing this petition in the district court, correctly analyzed this case under AEDPA, appropriately applying the deference that is due to the state court determination, as follows:

This Court finds the Court of Appeal's determination did not result in a decision that is contrary to, or involved an unreasonable application of clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence présented at trial. To obtain federal collateral relief for errors in the jury charge, petitioner must show that the ailing instruction so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire,* 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). In reviewing an ambiguous instruction, the court must consider the context of the instructions as a whole and the trial record, and determine whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle,* 502 U.S. at 72 n. 4, 112 S.Ct. 475; *Boyde v. California,* 494 U.S. 370, 380, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). If so, the court must then decide whether the error had a substantial and injurious effect or influence in determining the jury's verdict before granting relief in habeas proceedings. *See Calderon v. Coleman,* 525 U.S. 141, 145, 119 S.Ct. 500, 503, 142 L.Ed.2d 521 (1998); *Brecht v. Abrahamson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).

This standard is met if the record on collateral review leaves the judge in "grave doubt" as to the effect of the constitutional error. *See O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 994, 130 L.Ed.2d 947 (1995).

Considering the instructions as a whole, this Court cannot say that there was a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution. *See Estelle,* 502 U.S. at 72 n. 4, 112 S.Ct. 475. Moreover, even assuming that the jury did apply the erroneous instruction, in light of the theories of the parties and the evidence introduced, this Court agrees with the Court of Appeal's conclusion and cannot say that the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Calderon,* 525 U.S. at 145, 119 S.Ct. 500.

I agree with the district court that the Court of Appeal did not err, and that its decision under our standard of review was certainly not an *unreasonable* application of clearly established federal law, as determined by the Supreme Court of the United States.

I would therefore affirm the decision of the district court denying the petition for habeas corpus.