**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a0885n.06
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**

***Aug 10, 2012***

LEONARD GREEN, Clerk

| | |
|---|---|
| ANTHONY HODGES, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE UNITED |
| v. | ) STATES DISTRICT COURT FOR |
| | ) THE MIDDLE DISTRICT OF |
| | ) TENNESSEE |
| TONY PARKER, Warden, | ) |
| | ) |
| Respondent-Appellee. | ) |

Before: **SILER** and **GRIFFIN**, Circuit Judges; **TARNOW**, District Judge.[*]

**SILER**, Circuit Judge. Anthony Hodges petitions for a writ of habeas corpus, pursuant to

28 U.S.C. § 2254, from his conviction of first degree felony murder and aggravated child abuse in

Tennessee. The district court denied his application for the writ and granted a certificate of

appealability (COA). Hodges argues that his due process rights were violated when the state court

improperly instructed the jury and the government violated its *Brady* obligations, which resulted in

a fundamentally unfair trial. For the following reasons, we deny this petition.

I.

A.

In 1997, Hodges was convicted of both felony murder in the death of his step-daughter that

resulted from aggravated child abuse in violation of T.C.A. § 39-13-202(a)(2) and of aggravated

---

[*] The Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern
District of Michigan, sitting by designation.

child abuse and neglect of his step-daughter in violation of T.C.A. § 39-15-402(a)(1). The facts were summarized in *State v. Hodges*, 7 S.W.3d 609, 614-20 (Tenn. Crim. App. 1998). In pertinent part, the child died at the hand of either Hodges's wife or Hodges and was in the care of Hodges when she died. *Id*. at 614.

Since the government could not prove "which person–if only one–actually administered the [fatal abuse]," Hodges was prosecuted under a felony murder theory. *Id*. As the child's step-father, Hodges could be guilty of felony murder under Tennessee's criminal responsibility statute, T.C.A. § 39-11-402(3), because he did not prevent the abuse that he witnessed or because he neglected the child in spite of her injuries. *Hodges*, 7 S.W.3d at 617-18, 620-21, 623.

Hodges's defense was that he did not abuse the child or intend for her to die and did not call for medical attention for the child because he did not know she needed it and his wife, who had some medical training, said it was unnecessary.

The jury instructions included the elements for criminal responsibility of another:

> The defendant is criminally responsible for an offense committed by the conduct of      another if having a duty imposed by law or voluntarily under-taken to prevent the commission of the offense and acting with the intent to benefit in the proceeds or results of the offense or to promote or assist its commission, the defendant fails to make a reasonable effort to *prevent* the commission of the offense.

*Id.* at 627 (emphasis added).

Over Hodges's objection, the jury was also instructed about a juvenile criminal statute, T.C.A. § 37-1-403, that requires individuals with knowledge of child abuse to report it to authorities. The instruction stated:

> Any person having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect shall *report* such harm immediately by telephone or otherwise to [state authorities]. Persons includes, but is not limited to neighbor, relative, friend or any other person.

*Hodges*, 7 S.W.3d at 627 (emphasis added).

During Hodges's closing argument, defense counsel described the abuse that Hodges witnessed his wife inflict on his step-daughter. Defense counsel stated, "Let's just say it, right then, at that point, any man–any man in this jury and any woman in this jury would stop it. And that's for you to go upstairs and decide what [Hodges] is guilty of, for being a coward and not stopping it." Later in his argument, defense counsel described in greater detail the amount of abuse the child suffered. Then defense counsel stated:

> I don't like to say this about a client I represent, a man I've spent all this time with, but that's spineless, that's spineless that he didn't save that baby's life right there. That's true. That was cowardice. But it's not first degree murder. It's not first degree murder. Being a coward and being weak doesn't mean you desirewhat's happened.

During rebuttal the government argued that either Hodges murdered the child or he was criminally responsible for his wife's conduct. After discussing subsections one and two of the criminal responsibility statute, T.C.A. § 39-11-402, the prosecutor argued subsection three:

> But look at what we really have here. Having a duty imposed by law. Remember in jury selection when I told you every person had the duty under law. Well, the Judge is going to charge you about the duties that people have to protect children from being abused. He's going to tell you what the code says about that.And he's going to tell you what, if you apply the law, that Anthony Hodges should have done, even if he hadn't struck one blow to this child. Having a duty imposed by law and acting with the intent to benefit in the proceeds or results orto promote or assist

in its commission, fails to make a reasonable effort to *prevent* the offense. If you believe [defense counsel's] closing argument, you can convict Anthony Hodges of first degree murder as being criminally responsible. He didn't do anything. If he really and truly sat there that night and listened to her beating this child and didn't do anything, then he is criminally responsible for her conduct, even if everything else he did was correct.

(emphasis added). Summarizing the impact that the criminal responsibility statute had on the first degree murder charge, the prosecutor stated:

Some of you over here might think he's criminally responsible. Some of you over here might think he did it. And some of you in the middle might think it's a littleof both. It doesn't matter. You can still find him guilty of first degree murder. It doesn't matter.

No portion of the juvenile criminal statute was discussed during closing arguments.

After finding Hodges guilty, the jury sentenced him to life imprisonment without the possibility of parole for the felony murder charge and the trial court sentenced him to twenty-five years for the aggravated child abuse charge to run concurrently with the life sentence. *Hodges*, 7 S.W.3d at 613.

## B.

The Tennessee Court of Criminal Appeals affirmed his conviction and ruled that while the juvenile code instruction was "irrelevant" it was not reversible error because Hodges was not charged with violating that statute. *Id*. at 627-29. The Tennessee Supreme Court subsequently denied Hodges's application for permission to appeal. *Id.* at 609.

Thereafter, Hodges's petition for post-conviction relief in state court was denied. *Hodges v. State*, No. M2001-03068-CCA-R3-PC, 2002 WL 31730872, at *1 (Tenn. Crim. App. 2002).

Hodges then began his habeas corpus petition pursuant to 28 U.S.C. § 2254, raising numerous claims in pursuit of the writ including the impermissible jury instruction from his original appeal and a new *Brady* claim. During the course of the habeas proceedings Hodges discovered a potential *Brady* violation. The new evidence was a 2005 internal affairs report that cast doubt on the credibility of one of the police officers who testified against Hodges. Transcripts from interviews with officers in the report indicated that prosecutors had a poor opinion of the veracity of a detective that testified at Hodges's trial. The district court allowed Hodges to include this new evidence in the record.

Subsequently, the district court adopted the facts found by the state appellate court and denied all of Hodges's claims. Under a blanket grant of a COA, Hodges only appealed the jury instruction and *Brady* issues to this court.

## II.

A COA, "even if improvidently granted, vests jurisdiction in the court of appeals." *Porterfield v. Bell*, 258 F.3d 484, 485 (6th Cir. 2001) (citation omitted). But a blanket grant of a COA for procedurally defaulted claims may require a remand so the district court can "engage in the reasoned assessment of each procedurally defaulted claim as required by" the Supreme Court. *Id.* at 487.

If a state court indirectly addresses a constitutional issue, "but its analysis bears some similarity to the requisite constitutional analysis, we must carefully review both the record and the applicable law, and we may reverse only if we conclude that the state court's decision is contrary to

or an unreasonable application of federal law." *Filiaggi v. Bagley*, 445 F.3d 851, 854 (6th Cir. 2006) (quotation and citation omitted).

The relevant Tennessee criminal responsibility statute, T.C.A. § 39-11-402(3), states:

Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

The Tennessee juvenile code statute, T.C.A. § 37-1-403(a), contemporaneous with Hodges's trial, states:

(a) Any person, including but not limited to, any

* * *

(8) Neighbor, relative, friend, or any other person;

having knowledge of or is called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability, or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect, shall report such harm immediately [to state authorities] where the child resides.

"[T]o assert a cognizable *Brady* claim, a habeas petitioner must show that (1) evidence favorable to the petitioner, whether exculpatory or for impeachment purposes (2) was suppressed by the government, and (3) the petitioner suffered prejudice as a result." *Apanovitch v. Houk*, 466 F.3d 460, 474 (6th Cir. 2006) (citations omitted). The *Brady* rule "only applies to evidence that was known to the prosecution, but unknown to the defense, at the time of trial, and the duty to disclose applies even if the defense made no request." *Id.* And *Brady* applies only to information that is

"wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Finally, a *Brady* claim can overcome procedural default. *Apanovitch*, 466 F.3d at 473-74.

## III.

## A.

The government argues that Hodges's petition should be dismissed because the district court granted Hodges a blanket COA for all of his claims without an individualized assessment of each claim, which is required under *Slack v. McDaniel*, 529 U.S. 473 (2000).

In *Porterfield* we held the district court should give a "reasoned assessment of each procedurally defaulted claim as required by *Slack*." 258 F.3d at 487. But we also held that a COA "even if improvidently granted, vests jurisdiction in the court of appeals." *Id*. at 485.

Hodges has not taken advantage of his blanket COA. Even though he raised ten issues in his habeas petition to the district court and was granted a COA for all of those issues, he is only proceeding with two issues. Since Hodges's first claim is not procedurally defaulted and his second claim can overcome procedural default, his petition will be adjudicated.

## B.

Hodges claims his due process rights were violated when the trial court gave the juvenile code jury instruction because it allowed the jury to convict him on an impermissible theory of guilt, *i.e.*, it relieved the government of proving the *mens rea* for murder. *See Carella v. California*, 491 U.S. 263, 265 (1989) (The Due Process clause requires the government to prove every element of the charged offense beyond a reasonable doubt). He relies on *Boyde v. California*, 494 U.S. 370, 379-80 (1990), where the Court held "that when a case is submitted to the jury on alternative theories

the unconstitutionality of any of the theories requires that the conviction be set aside." (citations and quotation omitted).

The Supreme Court has held that, "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. We, therefore, have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Dowling v. United States*, 493 U.S. 342, 352 (1990). Indeed, "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The question "is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even universally condemned." *Id*. (citations and quotations omitted).

And we expounded in *Rattigan v. United States*, 151 F.3d 551, 556 (6th Cir. 1998): "The error in the instruction should be evaluated within the total context of the overall jury charge, the process of instruction, and the several components of the trial, including the testimony of witnesses, argument of counsel, receipt of exhibits, and instructions by the judge."

Hodges argues that his defense would be viable but for the juvenile code jury instruction because that instruction turns his failure to procure medical attention for his step-daughter into a strict liability crime since the juvenile code creates a duty under the law to *report* child abuse. Hodges states that the government wanted the instruction to support its impermissible criminal-

responsibility theory in closing arguments because when the juvenile statue is combined with the criminal responsibility statute it nullifies Hodges's defense.

But no part of the juvenile code was mentioned in closing arguments. In fact, the government argued that Hodges should have *prevented* the abuse. During closing arguments defense counsel stated that Hodges should have prevented his wife from abusing his step-daughter and called his client a "coward" and "spineless" for failing to do so. In rebuttal, the government argued that under the criminal responsibility statue if the jury believed defense counsel's argument that Hodges, with a duty imposed by law, should have prevented the abuse then it should find him guilty of murder. Accordingly, there was nothing improper about the government's argument.

However, when, as here, "the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other constitutional errors that may have occurred are subject to harmless-error analysis." *Neder v. United States*, 527 U.S. 1, 8 (1999). The state appellate court analyzed Hodges's constitutional claim under a harmless-error standard and found that the juvenile code instruction was not erroneous and, at most, harmless error. *Hodges*, 7 S.W.3d. at 627-28.

And since the irrelevant instruction had "no illegible interlineation and no meaningless annotation" or was as "inapplicable and confusing" as other instructions that had required a new trial, it found "no reversible error in the trial court's inclusion of this accurate and non-misleading, yet irrelevant instruction." *Id*. at 628-29 (quotation omitted).

This careful review of "both the record and the applicable law" does not reveal "an unreasonable application of federal law." *Filiaggi*, 445 F.3d at 854. The only place in the trial

where the language of the juvenile code appears is in the jury instructions. Therefore, the instruction cannot be said to have "so infected the entire trial that the resulting conviction violates due process." *Kibbe*, 431 U.S. at 154. We cannot say that the state court's application of federal law was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

C.

Hodges claims the government violated its *Brady* obligations when it failed to disclose that one of its witnesses had a reputation for offering false testimony. Evidence of this witness's reputation surfaced in a 2005 police internal affairs report concerning the witness. Since this report did not exist at the time of Hodges's 1997 trial the government had no obligation to disclose it. *Apanovitch*, 466 F.3d at 474. A statement in the report indicates that the opinion of the witness's veracity existed at the time of Hodges's trial. But a person's reputation for truthfulness is not information that can be "wholly" in the control of the government. *Coe*, 161 F.3d at 344. Since there was no *Brady* evidence Hodges's claim fails.

AFFIRMED.

No. 10-6046
*Hodges v. Parker*

**TARNOW**, Senior District Judge, dissenting.

Although I concur in part with the majority, I cannot agree with the majority's analysis or conclusion with respect to section III.B. The Tennessee Court of Criminal Appeals (TCCA) was wrong in finding that the erroneous jury instruction was merely irrelevant. Because I would conclude that the error was of constitutional magnitude, amounting to a structural error, I dissent. The majority concludes that because the juvenile code was not mentioned in closing arguments and because there is an interpretation of the closing arguments that could have supported a conviction, that there was nothing improper about the government's closing argument. Whether the juvenile code was mentioned or not, however, is not the decisive issue when deciding whether Petitioner's due process rights were violated.

"We review the district court's legal conclusions de novo and its factual findings for clear error." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004) (citation omitted). The district court, in this case, made only conclusions of law. *See* R. 84, Mem. Order, at 13. Therefore, the present appeal should be reviewed under a *de novo* standard, with no deference to the district court's ruling. *See Barker v. Yukins*, 199 F.3d 867, 870 (6th Cir. 1999).

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense." *Carella v. California*, 491 U.S. 263, 265 (1989) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). "Jury instructions relieving States of this burden violate a defendant's due process rights. Such directions subvert the presumption of innocence accorded to accused persons and also

- 11 -

invade the truth-finding task assigned solely to juries in criminal cases." *Carella*, 491 U.S. at 265 (internal citations omitted).

A conviction must be set aside if a case is submitted to a jury on an impermissible theory, even when alternate permissible theories were also presented. *Boyde v. California*, 494 U.S. 370, 379-80 (1990). In such a case, including permissible and impermissible theories, "it is possible that the guilty verdict may have had a proper basis, 'it is equally likely that the verdict . . . rested on an unconstitutional ground,' . . . and we have declined to choose between two such likely possibilities." *Id.* A jury instruction allowing a jury to convict on alternate theories—one of which is based on an impermissible legal ground—constitutes a structural error. *See Carella*, 491 U.S. at 265; *see also Martinez v. Garcia*, 379 F.3d 1034, 1040 (9th Cir. 2004).

Petitioner argues that, at the direction of the prosecution, the trial court instructed the jury that it could convict him on an impermissible theory—one that relieved the government of its burden to prove each element of the crime beyond a reasonable doubt. Hodges was convicted of first-degree murder based on Tennessee's felony-murder statute and the underlying felony offense of aggravated child abuse. The Tennessee Court of Criminal Appeals (TCCA) described three possible theories of culpability to Hodges' jury—two theories of direct responsibility and one indirect. *State v. Hodges*, 7 S.W.3d 609, 620-23 (Tenn. Crim. App. 1999). The jury was advised that felony murder culpability for first-degree murder could be established directly by proving either:

> that Hodges intentionally delivered blows to Miyoshi which proved fatal; or

> that Hodges, while serving as Miyoshi's sole caretaker and knowing she was "in serious medical trouble," took no action to provide for emergency medical attention, allowing her to suffer a "serious bodily injury" (here, death).

*Id.*

The third theory of culpability was based on the Tennessee criminal-responsibility statute.

The Tennessee criminal-responsibility statute (T.C.A. § 39-11-402(3)) states:

> Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

Tenn. Code Ann. 39-11-402(3) (1995). Under the criminal-responsibility statute, the jury could have convicted Hodges for the underlying acts of Kena if the jury found that Hodges had a duty to prevent serious bodily injury, intended to assist or promote serious bodily injury, and failed to make a reasonable effort to prevent such injury. *Hodges*, 7 S.W.3d 609, 623-34. In other words, Hodges could have been convicted of first-degree murder if the jury believed that while he was serving as Miyoshi's sole caretaker, knew that she was in serious medical trouble and failed to make reasonable efforts to obtain emergency medical care.

Hodges' theory of defense was that he did not recognize Miyoshi's need for medical care. His defense was supported by 1) his own statements that he did not know of a need for emergency medical care; 2) evidence that Kena Hodges was a nurse's aide, with superior medical knowledge than Hodges'; 3) testimony of Kena Hodges' coworkers to support his assertion that Kena made Hodges' think there was no medical emergency; and 4) expert testimony stating that Miyoshi would have had slight internal bleeding and that her injuries would likely make her seem like she was irritable, lethargic, and sleepy. Hodges attempted to use the evidence to support his defense that

although he knew Miyoshi had suffered some harm, he relied on Kena Hodges' advice and her medical knowledge as a nurse's aide to conclude that Miyoshi did not need emergency medical care.

If the jury had only been presented with the three permissible government theories, Hodges would have had a meaningful and viable defense. He, however, did not because of the impermissible jury instruction that was given at the request of the prosecution and with the consent of the trial court judge. Instead of seeking an applicable jury instruction, the prosecutor sought and obtained an instruction that should have never been given—one that deprived Hodges of a fair trial and relieved the government of its burden to prove each element of the crime beyond a reasonable doubt.

The prosecutor successfully obtained a jury instruction on the Juvenile Code's duty to report any injury that may be a result of child abuse. The jury instruction stated:

> Any person having knowledge of or called upon to render aid to any child who is suffering from or has sustained any wound, injury, disability or physical or mental condition which is of such a nature as to reasonably indicate that it has been caused by brutality, abuse or neglect or which on the basis of available information reasonably appears to have been caused by brutality, abuse or neglect *shall report* such harm immediately by telephone or otherwise to [state authorities]. Persons includes, but is not limited to neighbor, relative, friend or any other person.

R. 49, Notice of Filing Record, Trial Tr. Vol. VIII at 112 (emphasis added).

The TCCA has correctly held that it this jury instruction should not have been given and that it was improper to link it to this duty to the criminal-responsibility statute to support an alternate theory of liability. *Hodges*, 7 S.W.3d at 627 ("Failing to *report* child abuse, by its terms, is an altogether different proposition and does not satisfy this prong of criminal responsibility.") (emphasis in original).

In Hodges' case, the inclusion of the Juvenile Code's rigorous reporting duty in conjunction with the criminal-responsibility statute could have reasonably led the jury to convict Hodges based on his failure to report child abuse—a theory which would not support a conviction for felony murder. If the jury convicted Hodges on this theory, then his defense was essentially meaningless and the government was relieved of its burden at trial by converting the alleged crime to one of strict liability.

On January 9, 1997, the trial court discussed the charges requested on the record. R. 49-9, Notice of Filing Record, Trial Tr. Vol. VII at 951-70. The record shows that the government intended for the jury to convict on the duty to report child abuse when linked with the criminal-responsibility statute. During closing arguments the prosecutor attacked Hodges' defense by relying on the criminal-responsibility statute for a conviction. She stated to the jury:

> The *Judge is going to instruct you about criminal responsibility. And it's sort of hard to understand, criminal responsibility for the conduct of another*. . . .
> But look at what we really have here. *Having a duty imposed by law*. Remember in jury selection when I told you every person had the duty under law. Well, *the Judge is going to charge you about the duties that people have to protect children from being abused*. He's going to tell you what the code says about that. And he's going to tell you what, if you apply the law, that Anthony Hodges should have done, even if he hadn't struck one blow to this child. Having a duty imposed by law and acting with the intent to benefit in the proceeds or results or to promote or assist in its commission, fails to make a reasonable effort to prevent the offense. *If you believe [defense counsel's] closing argument, you can convict Anthony Hodges of first degree murder as being criminally responsible. He didn't do anything. If he really and truly sat there that night and listened to her beating this child and didn't do anything, then he is criminally responsible for her conduct, even if everything else he did was correct.*

R. 49-10, Notice of Filing Record, Trial Tr. Vol. VIII at 63-65 (emphasis added).

The prosecutor's mistake of the applicable law, which was accepted by the trial court judge, should not be minimized. If a prosecutor and a trial judge were confused as to the applicability of the jury instruction, it is clear that jurors would be confused as well.

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Boyde*, 494 U.S. at 380-81.

We have no way of knowing upon which theory each juror convicted Hodges. It is possible, however, that the jurors may have been just as confused as the prosecutor and trial judge. The jury may have relied on the incorrect jury instruction. The jury was instructed that a person who has knowledge that a child has suffered an injury has a duty to report abuse under the Juvenile Code. The jury was further instructed that if one has a "duty under the law"—a phrase used by the prosecutor in closing argument—even if Hodges did nothing affirmative and the jury sincerely believed the defense, then they could have convict him of first degree murder. If the jury believed the defense, applied the theory proposed by the prosecutor during her closing argument, and focused on the duty under the law to report child abuse, it is very possible that one or more jurors may have convicted Hodges under a theory of criminal responsibility for a failure to report possible child abuse, which is unconstitutional.

"'Because a jury's deliberations are secret and unreported, we have no way of determining' which theory of conviction was the basis of the jury's guilty verdict." *Martinez*, 379 F.3d at 1040 (citing *Ho v. Carey*, 332 F.3d 587, 596 (9th Cir. 2003)). I would find that the error in the jury

instructions was so fundamental that it constitutes structural error, requiring reversal.  *See Boyde*,

494 U.S. 379.

I respectfully dissent.