James **BELL**, Petitioner–Appellant,

v.

John **HURLEY**, Warden, Respondent–Appellee.

No. 01–4068.

United States Court of Appeals, Sixth Circuit.

March 10, 2004.

David H. Bodiker, T. Kenneth Lee, Public Defender's Office, Columbus, OH, for Petitioner–Appellant.

Bruce D. Horrigan, Corrections Litigation Section, Cleveland, OH, for Respondent–Appellee.

Before BOGGS, Chief Judge; BATCHELDER and SUTTON, Circuit Judges.

BATCHELDER, Circuit Judge.

James Bell ("Bell"), a.k.a. Abdul Muhaymin Nuruddin. appeals from the judgment of the district court denying him a writ of habeas corpus. Because we find that any error which occurred in Bell's trial was harmless, we affirm the judgment of the district court.

## I.

On April 11, 1993, inmates began a riot at the Southern Ohio Correctional Facility ("SOCF"), a maximum security prison located in the Scioto County town of Lucasville, Ohio. Shortly after the riot began. Corrections Officer ("CO") Darrel Shepherd responded to a distress call from the L–6 cellblock. Shepherd testified that upon his arrival at L–6, he found CO Dotson being attacked by a group of inmates that included Bell, an inmate who was assigned to the K cellblock. Shepherd testified that some of those inmates, and specifically Bell, who was wielding a PR–24 baton, attacked him. and that CO David Stern came to the scene and intervened. Stem was able to extricate Shepherd from L–6. and to lock down that section. The riot ended 11 days later, with nine inmates and one Corrections Officer dead, and many more injured.

When the inmates eventually surrendered, each was photographed and identified by number. CO Shepherd subsequently looked through the pictures and identified Bell as his attacker. CO Stern viewed a four-photo spread and identified Bell as one of the inmates who attacked Shepherd. Bell was indicted on one count of felonious assault and one count of assault; each count included a specification of a prior conviction for aggravated murder.

The riot garnered extensive media attention, with one newspaper suggesting that "[i]n the town of 1.500 nearly everyone has a friend or relative who works at the prison." Accordingly, prior to trial. Bell filed a motion for change of venue, claiming that extensive pretrial publicity created a substantial likelihood that he would be deprived of his constitutional right to a fair and impartial jury. The trial court overruled the motion.

During Bell's three-day jury trial. Bell appeared before the jury in prison clothes, handcuffs, leg irons, shackles, and a belly chain. Bell's counsel apparently objected to the shackles in the trial judge's chambers, but did not do so on the record, and the judge overruled the objection without holding a hearing.

The jury found Bell guilty of felonious assault with the aggravated murder prior conviction specification, and he was sentenced to 12–15 years in prison. Both the Scioto County Court of Appeals and the Ohio Supreme Court affirmed his conviction on direct appeal. On July 29, 1996. Bell filed a petition to vacate his conviction and set aside his sentence, which was denied. The Scioto County Court of Appeals affirmed the denial, and the Ohio Supreme Court dismissed his appeal as not involving any substantial constitutional question.

Bell filed his § 2254 habeas petition on March 17, 1998. The district court denied the petition but certified three questions for appeal: 1) whether Bell was denied a fair trial when the trial court, without any hearing, refused his trial counsel's off-the-record request to have Bell appear in court without shackles; 2) whether petitioner was denied effective assistance of counsel when his trial counsel failed to object on the record to Bell's appearing in shackles before the jury: and 3) whether petitioner

was deprived of a fair and impartial jury because of the trial court's refusal to change the trial venue despite the pretrial publicity. Bell filed a timely notice of appeal as well as a motion to amend the certificate of appealability ("COA") to include all dismissed habeas claims, which motion this court denied.

## II.

Bell brings his petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). which provides in relevant part:

An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court adjudication is "contrary to" Supreme Court precedent under § 2254(d)(1), "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" and arrives at a different result. *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court adjudication involves "an unreasonable application of" Supreme Court precedent under § 2254(d)(2), "if the state court identifies the correct governing legal rule from [the Supreme] Court's

cases but unreasonably applies it to the facts of the particular ... case." or if the court unreasonably refuses to extend, or unreasonably extends, existing legal principles from the Court's precedents to a new context. *Id.* at 407. The writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir.2000) (citing *Williams,* 529 U.S. at 412). AEDPA also mandates that this court presume that state court factual determinations are correct unless the applicant rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

Bell's first claim is that the state's decision to try him with shackles on the wrists, legs, and waist violated his right to due process and a fair trial. However, this is not the question which was certified for appeal. Rather, the question for which a COA was granted is whether "petitioner was denied a fair trial when the trial court, *without holding a hearing on the need for restraints,* refused his trial counsel's off-the-record request to have his shackles removed." (emphasis added). Under AEDPA, the question is whether the trial court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1).

In the instant case, Bell's counsel raised in the trial judge's chambers, apparently out of the presence of any court reporter, the objection to trying Bell in shackles. The judge overruled the objection without a hearing. The record is murky at best as to what inquiry the trial judge made or what facts he considered prior to his overruling Bell's in-chambers objection to the use of shackles at trial. Because the ob-

jection and ruling were not put on the record, we have no reliable information about this in-chambers meeting. The same judge who presided over Bell's trial, however, denied Bell's post-conviction motion to vacate his conviction. In that motion. Bell argued that his constitutional rights had been violated by the trial court's failure to hold an evidentiary hearing on the need for shackles before permitting Bell to be shackled during the trial. After considering the affidavit of William Kempton, the riot trial coordinator for the SOCF. which included details of Bell's prison conduct record, the judge held that if the undisputed information in the Kempton affidavit had been presented at an evidentiary hearing prior to Bell's trial, he would have ordered Bell shackled throughout the trial. On appeal, the Ohio Court of Appeals concluded that while the trial judge had erred in ordering the shackling without first conducting an evidentiary hearing, the error was harmless. The information contained in the Kempton affidavit, the Court of Appeals said, established that Bell was a security risk and that the shackling was warranted to protect people in the courtroom.

The district court agreed, noting that the deposition of the trial judge, which was taken in the course of the habeas proceedings in the district court, suggests that prior to the trial, the trial judge had considered testimony from the prison guards in deciding whether to keep Bell shackled during the trial. The state court's judgment that the failure to first hold an evidentiary hearing was harmless error, the district court concluded, was reasonable, and did not result in a judgment that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent as it existed at the time the state court ruled.

The Supreme Court has never directly addressed the question of whether a trial court's failure to hold an evidentiary hearing on a motion related to shackling denies a defendant a right to fair trial. The parties therefore turn generally to the Supreme Court's cases concerning prisoner restraints, security, and prison garb. While the parties rely extensively on Supreme Court cases in which the Court examined the Sixth and Fourteenth Amendment prejudice associated with extra guards at trial, *see Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), and wearing of prison garb at trial, *see Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), the Supreme Court has expressly addressed the use of shackles in only one case: *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). In reviewing the case of an unruly defendant who was prone to outbursts in the courtroom, the *Allen* court found that a trial court may, consistent with the Constitution, bind and gag an obstreperous defendant when necessary. *Id.* at 344. The Court spoke at length about the potential prejudice which may arise from binding a defendant:

> Trying a defendant for a crime while he sits bound and gagged before the judge and jury would to an extent comply with that part of the Sixth Amendment's purposes that accords the defendant an opportunity to confront the witnesses at the trial. But even to contemplate such a technique, much less see it, arouses a feeling that no person should be tried while shackled and gagged except as a last resort. Not only is it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.

*Id.* The Court nonetheless recognized that "in some situations which we need not attempt to foresee, binding and gagging might possibly be the fairest and most reasonable way to handle a defendant who acts as Allen did here." *Id.* Subsequently, in *Holbrook,* the Court considered "whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial is the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." *Holbrook,* 475 U.S. at 568–69.[1] Accordingly, while the Supreme Court has not squarely addressed the question of whether an evidentiary hearing is required prior to a trial in which the accused appears in shackles in the courtroom, we nonetheless believe based upon *Allen* and *Holbrook* that the Supreme Court would require a particularized inquiry prior to permitting a defendant to be tried in shackles. We must consider, therefore, whether the district court erred in concluding that the state court's finding of harmless error is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

First, we look at whether the state court's even applying a harmless error test is contrary to or involves an unreasonable application of clearly established Supreme Court precedent. We answer in the negative. The Supreme Court has certainly not foreclosed the application of a harmless error analysis to claims of constitutional error rooted in a trial court's failure to hold an evidentiary hearing prior to ordering a defendant shackled during his trial. Indeed, in *Estelle,* 425 U.S. at 506, the Court noted—with no indication of disapproval—that the Fifth Circuit had frequently subjected claims of constitutional violation stemming from a defendant's having been tried in prison garb to harmless error analysis. And unlike shackling a defendant for trial, compelling a defendant to be tried in prison garb "furthers no essential state policy." *Id.* at 505.

We then must determine whether the state court's application of the harmless error analysis in this particular case is contrary to clearly established Supreme Court precedent or is an unreasonable application of that precedent. It is not. The Supreme Court has long held that on collateral review, constitutional trial error is harmless unless that error had "a substantial and injurious effect or influence in determining the jury's verdict." *Calderon v. Coleman,* 525 U.S. 141, 145, 119 S.Ct. 500, 142 L.Ed.2d 521 (1998) (quoting *Brecht v. Abramson,* 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (adopting the *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), standard of review for federal habeas review of state convictions)). Here the evidence of Bell's guilt is overwhelming: both Corrections Officers Shepherd and Stern independently identified Bell as the man who assaulted Shepherd,[2] and

1. The district court and the parties also rely extensively on the Sixth Circuit's opinion in *Kennedy v. Cardwell,* 487 F.2d 101, 107 (6th Cir.1973) ("Several courts, including this one, have recognized that the physical indicia of innocence are so essential to a fair trial that the better practice is to hold a hearing. . . ."). However, it was inappropriate for the lower court to look to opinions of this court rather than holdings of the U.S. Supreme Court in a review conducted under AEDPA. *See Harris*

*v. Stovall,* 212 F.3d 940, 944 (6th Cir.2000) ("It was error for the district court to rely on authority other than that of the Supreme Court of the United States [including 6th Circuit authority] in its analysis under § 2254(d).").

2. While Bell asserts that "[n]either Corrections Officers Shepherd or Stern were able to identify Mr. Bell immediately after the riot," he cites no support for this statement other

Bell, testifying on his own behalf at trial, conceded that he was assigned to Block K. but that he was in Block L when the riot occurred and that he saw Shepherd there. The prejudice to Bell from the jury's observing him in shackles, on the other hand, is slight. The jurors already knew that he was a prisoner because he was being tried for crimes arising from a prison riot. And the jurors also knew that the assault charges on which he was being tried included a specification of a prior conviction for aggravated murder. Mr. Bell's sole defense to the crimes with which he was charged was a protestation of innocence based upon his claim that he is a peaceful Muslim–a claim which a jury was not likely to believe to be sufficient given his less-than-peaceable record.

Finally, we are convinced, as was the Ohio Court of Appeals, that if the case were remanded for an evidentiary hearing on the issue of shackling, the court would find Kempton's affidavit, which confirms that Bell was in prison for aggravated murder and was housed in the highest security section of the prison—maximum security, level 4—based on his record of prison fights and threats against guards, more than sufficient evidence to shackle Bell during the trial.

Accordingly, while we believe that the trial court erred in failing to conduct a particularized inquiry concerning the use of shackles in Bell's trial, we find that the error did not have "a substantial and injurious effect or influence in determining the jury's verdict." Bell suffered no prejudice from the failure to hold a hearing on the issue of shackling him for trial, because the evidence was ample to support the shackling. Any prejudice from the shack-

ling itself (which is not the issue certified for appeal in any event) was more than countered by the overwhelming evidence against Bell presented at trial. The state court's judgment that the error was therefore harmless is neither contrary to nor an unreasonable application of the governing Supreme Court precedent, and Bell's petition for a writ of habeas corpus on this basis must be denied.

■ Bell next claims that he received ineffective assistance of counsel because his attorney failed to place on the record his objections to being tried while shackled. Because we find the error to be harmless. Bell cannot meet the prejudice requirement of *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)—that is, he cannot establish a reasonable probability that but for his counsel's error, the result of the trial would have been different. *Id.* Accordingly, the district court was correct in denying the writ.

Bell's final claim is that the district court's denial of change of venue violated his Sixth Amendment right to trial by an impartial jury. He states that "[i]t would have been impossible for the jurors to put aside the tidal wave of publicity streaming towards convicting the inmates they believed to be responsible." In support of this contention. Bell includes in the record a voluminous collection of newspaper articles expressing the outrage of the community at those who perpetrated the prison riot. The Ohio Court of Appeals, however, reviewed this claim on direct appeal and concluded, after examining the voir dire transcript, that the trial court had not erred in denying the motion for change of venue. The appellate court found that al-

than his own previous brief filed before the Court of Appeals for Scioto County. The state's witness. Carey Sayers, however testified that during the course of the investigation

both Shepherd and Stern identified Bell from picture arrays independently and without hesitation.

though there was unquestionably a high level of awareness among potential jurors about the riot, none of the jurors had heard or read about Bell or the crime with which he was charged. Furthermore, the court found, the trial court had excused ten potential jurors who expressed the concern that they might not be able to put aside their personal views and decide the case solely on the evidence presented, and all of the jurors and alternates actually seated assured the trial court that they could decide the case only on the basis of the evidence presented in court. Finally, the court noted that Bell did not exercise all of his peremptory challenges. The appellate court concluded that Bell had not shown the necessary prejudice against him in the community to justify the motion for a change of venue.

Again, the requisite question is whether the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). The Supreme Court has stated that a trial court's findings of juror impartiality may be overturned only for "manifest error." *Patton v. Yount,* 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984).

The Supreme Court has established two standards for assessing claims of jury partiality: presumed prejudice and actual prejudice. *See Murphy v. Florida,* 421 U.S. 794, 798, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). *See also Irvin v. Dowd,* 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Presumed prejudice occurs in those cases where adverse pretrial publicity "create[s] such a presumption of prejudice in a community that the jurors' claims that they can be impartial should not be believed." *Patton,* 467 U.S. at 1031. This court has noted that this standard has only been used by the Supreme Court in "ex-

traordinary" cases, and reiterated that "it is well-settled that pretrial publicity itself-even pervasive, adverse publicity-does not inevitably lead to an unfair trial.'" *DeLisle v. Rivers,* 161 F.3d 370, 382 (6th Cir. 1998) (en banc) (quoting *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 554, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976)). Indeed, this court has noted that "[s]ince *Murphy,* the Supreme Court has not applied the 'trial setting inherently prejudicial' standard of *Rideau [v. Louisiana,* 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963)]. *Estes [v. Texas,* 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965)], and *Sheppard [v. Maxwell,* 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966)]. presumably because the 'televised interrogation/confession in a smaller community' and the 'tabloid-esque, carnival atmosphere' instances have not arisen. We think that the holdings in those cases are, therefore, to be limited to their facts." *Nevers v. Killinger,* 169 F.3d 352, 363 (6th Cir.1999), *abrogated on other grounds by Harris v. Stovall,* 212 F.3d 940 (6th Cir.2000).

■ While pretrial publicity about the riot in general was extensive, it did not mention Bell specifically nor did it reach the level of the publicity in any of the cited cases. Indeed, unlike *Estes* and *Shepherd,* the court proceedings here cannot be described as a circus-like atmosphere. *See Murphy,* 421 U.S. at 799 (describing the "circus atmosphere" of *Estes* in which the press overran the courtroom with their equipment, and the carnival atmosphere of the courthouse in *Sheppard* ). Bell's case is also factually dissimilar to *Rideau,* in which tens of thousands of residents saw the accused's 20–minute confession on television, and *Murphy,* in which the petitioner claimed that the jury had learned of a prior conviction as well as certain facts about the crime. *See Rideau,* 373 U.S. at

724; *Murphy*, 421 U.S. at 800–02. By contrast, the district court found that:

> the record of publicity provided by petitioner reveals that the well-publicized incidents had to do with the holding of hostages, the murder of inmates, and most extensively the brutal killing of a corrections officer held captive during the SOCF riot. None of these news articles mentioned petitioner's name or set forth any facts even remotely indicating petitioner was involved or played any part in those offenses: nor did any evidence come out during petitioner's trial tying him to those events. Only one newspaper article briefly mentioned, among other riot-related indictments, petitioner's felonious assault indictment, and only one other article similarly mentioned petitioner's indictment for another riot-related offense. Neither article provided any details about the alleged offenses charged against petitioner. The only other articles provided by petitioner that specifically mentioned petitioner were articles written after the jury was seated and his trial had commenced.

It is therefore not surprising that none of the jurors exhibited a detailed knowledge of Bell's alleged offense. Accordingly, because this court in *Nevers* limited the presumed prejudice theory to the extraordinary facts of the cases which produced the theory, and because Bell has failed to establish the kind of outrageous circumstances at issue in those cases, we find that his allegations do not rise to the level of presumed prejudice. Therefore, the state courts' failure to evaluate Bell's claim under the presumed prejudice standard is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

■ The second standard utilized by the Supreme Court in pretrial publicity cases

is actual prejudice. Here, the court must assess the voir dire of the individual jurors. It is well established that the jurors need not "be totally ignorant of the facts and issues involved." *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Rather, "[i]t is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Id.* at 723. These determinations are best made by the trial judge, who can assess the demeanor and candor of the prospective jurors. Under § 2254(e)(1), the trial court's determinations regarding partiality of the individual jurors during voir dire are factual findings entitled to deference unless Bell can demonstrate by clear and convincing evidence that those determinations were erroneous. While Bell does suggest that jurors and prospective jurors knew about the riot and had contacts to the prison, he does not address any particular seated juror's voir dire, and fails to provide clear and convincing evidence that the jurors empaneled could not be impartial. The state appellate court, although it did not rely on Supreme Court precedent in doing so, came to exactly that conclusion. Accordingly, we hold that the state court's judgment was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

## CONCLUSION

For the foregoing reasons, the judgment of the district court denying the petition for a writ of habeas corpus is AFFIRMED.