**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER ELVIK, | No.  13-17530 |
| Petitioner-Appellee, | D.C. No.<br>3:04-cv-00471-GMN-WGC |
| v. | |
| RENEE BAKER, Warden and ATTORNEY GENERAL OF THE STATE OF NEVADA, | ORDER |
| Respondents-Appellants. | |

| | |
|---|---|
| PETER ELVIK, | No.  14-15126 |
| Petitioner-Appellant, | D.C. No.<br>3:04-cv-00471-GMN-WGC |
| v. | |
| RENEE BAKER, Warden and ATTORNEY GENERAL OF THE STATE OF NEVADA, | |
| Respondents-Appellees. | |

Before:  SCHROEDER and N.R. SMITH, Circuit Judges, and KRONSTADT,[*] District Judge.

The prior memorandum disposition and dissent filed on June 28, 2016, are hereby amended concurrent with the filing of the amended disposition today. With these amendments, Judge N.R. Smith has voted to deny the petition for rehearing en banc, and Judges Schroeder and Kronstadt have so recommended.

The full court was advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED**. No further petitions for rehearing or rehearing en banc may be filed in response to the amended disposition.

---

[*] The Honorable John A. Kronstadt, United States District Judge for the Central District of California, sitting by designation.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER ELVIK, | No. 13-17530 |
| Petitioner - Appellee, | D.C. No. 3:04-cv-00471-GMN-WGC |
| v. | |
| RENEE BAKER and ATTORNEY GENERAL OF THE STATE OF NEVADA, | AMENDED MEMORANDUM[*] |
| Respondents - Appellants. | |

| | |
|---|---|
| PETER ELVIK, | No. 14-15126 |
| Petitioner - Appellant, | D.C. No. 3:04-cv-00471-GMN-WGC |
| v. | |
| RENEE BAKER and ATTORNEY GENERAL OF THE STATE OF NEVADA, | |
| Respondents - Appellees. | |

On Remand From the United States Supreme Court

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: SCHROEDER and N.R. SMITH, Circuit Judges, and KRONSTADT,** District Judge.

The Nevada Attorney General appeals the district court's order conditionally granting Peter Elvik's 28 U.S.C. § 2254 habeas corpus petition, arguing that (1) the district court was obligated to develop alternative theories to support the Nevada Supreme Court's decision, and (2) the district court erred by concluding that the trial court's failure to provide a jury instruction was not a harmless error. We affirm.

1. The district court was not obligated to develop alternative theories to support the Nevada Supreme Court's decision. The Nevada Supreme Court did not provide a summary decision without reasoning, as in *Harrington v. Richter*, 562 U.S. 86, 96 (2011), or a decision that failed to address one of petitioner's claims, as in *Johnson v. Williams*, 133 S. Ct. 1088, 1096–97 (2013). Instead, the Nevada Supreme Court provided a reasoned decision that addressed all of the key issues in Elvik's petition. Therefore, the district court did not err by analyzing the rationale of the Nevada Supreme Court as presented in its reasoned opinion.

2. In *Davis v. Ayala*, the Supreme Court clarified that the Nevada Supreme Court's harmless error determination must be analyzed under the framework set

---

** The Honorable John A. Kronstadt, District Judge for the U.S. District Court for the Central District of California, sitting by designation.

out in 28 U.S.C. § 2254(d). 135 S. Ct. 2187, 2198 (2015). Here, the Nevada Supreme Court provided a reasoned decision on whether the error was harmless. But the court analyzed the error under a more deferential state law standard rather than *Chapman v. California*, 386 U.S. 18, 24 (1967), which is the required standard for determining whether federal constitutional errors are harmless. This was "contrary to . . . clearly established federal law," and when a state court applies the incorrect legal standard, we afford it no deference. *See Shirley v. Yates*, 807 F.3d 1090, 1101 (9th Cir. 2015). Instead, we proceed to analyze whether the error was harmless de novo.

3. The trial court's failure to provide the jury with an instruction regarding Nevada Revised Statute section 194.010 was not a harmless error. On collateral review, an error is not harmless if it "had [a] substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard, petitioners are not entitled to habeas relief "unless they can establish that [the trial court's error] resulted in 'actual prejudice.'" *Id.* The Supreme Court has explained:

> [I]f one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude

that substantial rights were not affected. The inquiry cannot be merely whether there was enough [evidence] to support the result, apart from . . . the error. It is rather . . . whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos*, 328 U.S. at 765. Additionally, "[w]here the record is so evenly balanced that a judge 'feels himself in virtual equipoise as to the harmlessness of the error' and has '"grave doubt" about whether an error affected a jury [substantially and injuriously], the judge must treat the error as if it did so.'" *Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011) (second alteration in original) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 437–38 (1995)).

Nevada Revised Statute section 194.010 creates a presumption that children (between the ages of eight years and fourteen years) lack the capacity to distinguish right from wrong. *See Winnerford Frank H. v. State*, 915 P.2d 291, 293 (Nev. 1996). Accordingly, the prosecution bears the burden of rebutting this presumption by establishing, through clear proof, "that at the time of committing the act . . . [the child] knew its wrongfulness." Nev. Rev. Stat. § 194.010. Elvik's proposed instruction (based on section 194.010) stated:

All persons are liable to punishment except those belonging to the following class as it applies to this case:

Children between the ages of eight years and fourteen years, in the absence of clear proof that at the time of committing the act charged

against them they knew its wrongfulness. Peter Elvik was fourteen years old on August 31, 1995.

The trial court rejected the instruction. Accordingly, the trial court did not instruct the jury as to the applicability of section 194.010.

We have "grave doubts" as to whether the trial court's error was harmless. *See Garcia v. Long*, 808 F.3d 771, 781 (9th Cir. 2015) ("[The *Brecht*] standard is satisfied if the record raises 'grave doubts' about whether the error influenced the jury's decision."). Juries are presumed to follow the instructions given to them by the trial court. *Vitello v. United States*, 425 F.2d 416, 422 (9th Cir. 1970). Thus, had the trial court given the instruction, the jury would have been required to presume that Elvik was not liable for his actions, unless the government proved by clear evidence that Elvik knew (at the time he committed the crimes) that his conduct was wrong. The trial court's failure to give the instruction relieved the government of its burden of proving an element of the crime.

The government contends that, even without the instruction, the record contains sufficient evidence indicating that Elvik understood the wrongfulness of his actions, and that he cannot meet the standard that there was "much more than a 'reasonable possibility' that the result of the [trial] would have been different." *Davis*, 135 S. Ct. at 2203 (citing *Brecht*, 507 U.S. at 637). The evidence in the

record, however, is mixed. Some evidence suggests that Elvik may have known that what he did was wrong. He fled from a motel when informed the police were coming, he hid the victim's handgun and money clip, he gave the police a false name, and he testified at trial that he "didn't want some little kid to find the [handgun], or shoot, you know, or anything like that." Other evidence, however, suggests that Elvik was immature and childish, and did not understand the wrongfulness of his actions. He remarked that he might not live long because of "some big earthquake," he referred to his mother with a crude expletive, he believed he would be sent to juvenile detention, and he testified at trial that he was scared and did not think anyone would believe him. Still more evidence could be viewed by the jury to support either contention, such as Elvik's made up story of being under the influence of LSD. On the basis of the full record and given the state's burden of proof we are persuaded that had the jury been properly instructed, there was a reasonable probability the jury would have acquitted him, not merely a reasonable possibility that they could have. We agree with the district court and conclude that the trial court's failure to provide a jury instruction regarding section 194.010 was not harmless.

Because we affirm the district court's conditional grant of Elvik's habeas petition, we do not reach the issues raised in Elvik's cross appeal.

-6-

**AFFIRMED**.

KRONSTADT, District Judge, concurring in part and dissenting in part:

I concur with the conclusion of the majority that "[t]he district court was not obligated to develop alternative theories to support the Nevada Supreme Court's decision." I also agree with its statements that "Nevada Revised Statute section 194.010 creates a presumption that children (between the ages of eight years and fourteen years) lack the capacity to distinguish right from wrong" and that as a result, "the prosecution bears the burden of rebutting this presumption by establishing, through clear proof, 'that at the time of committing the act . . . [the child] knew its wrongfulness.'" (quoting Nev. Rev. Stat. § 194.010). Finally, I agree with the majority's description of the *Brecht* standard, which on collateral review governs the determination of whether an error is harmless, as clarified in *Davis v. Ayala*, 135 S. Ct. 2187 (2015). I disagree, however, with the application of the *Brecht* standard by the majority to the record evidence. Therefore, I respectfully dissent from its conclusion that "[t]he trial court's failure to provide the jury with an instruction regarding Nevada Revised Statute section 194.010 was not a harmless error."

As the majority observes, "[t]he government contends that, even without the instruction, the record contains sufficient evidence indicating that Elvik understood

the wrongfulness of his actions." The majority then states that the evidence in the record is "mixed" and concludes that "[o]n the basis of the full record and given the state's burden of proof we are persuaded that had the jury been properly instructed, there was a reasonable probability the jury would have acquitted him, not merely a reasonable possibility that they could have." It is with these conclusions that I respectfully disagree.

In my view, the record evidence is not "so evenly balanced" that a judge could feel "in virtual equipoise as to the harmlessness of the error" or have "grave doubt about whether an error affected a jury [substantially and injuriously] . . . . " *Merolillo v. Yates*, 663 F.3d 444, 454 (9th Cir. 2011) (alteration in original)(internal quotation marks omitted) (citing *O'Neal v. McAninch*, 513 U.S. 432, 435, 437–38 (1995)). Instead, a consideration of the record evidence as a whole supports the conclusion that the error did not have a substantial and injurious effect or influence on the verdict. For these reasons, "on the record in this case, [defendant] cannot establish actual prejudice . . . ." *Davis*, 135 S. Ct. at 2203.

The following record evidence, some of which is cited by the majority, in my view shows that Elvik had a level of sophistication and understanding that would cause any reasonable jury to conclude that, when he shot and killed the victim, Elvik knew the difference between right and wrong:

1. Elvik previously had been arrested for stealing a motor vehicle.

2. After the shooting, Elvik took the victim's briefcase and handgun. The briefcase contained the victim's money clip and the keys to his vehicle. Elvik then drove the victim's vehicle nearly five hundred miles from Carson City, Nevada to Costa Mesa, California.

3. After arriving in California, Elvik contacted his 13-year-old girlfriend, picked her up in the victim's vehicle, and checked into a motel with her for the night. He took the victim's handgun and money clip into the motel room.

4. The day after the shooting, at approximately 3:00 a.m., California law enforcement personnel, who had become aware of the events in Nevada, identified the vehicle outside the motel as the one that belonged to the victim of the shooting. They contacted the person working at the front desk of the motel from whom they learned that Elvik was the guest associated with that vehicle. Shortly thereafter, the person at the front desk called the room in which Elvik and his girlfriend were staying and told him to flee. Elvik and his girlfriend left the room. Elvik jumped from the balcony. Although his girlfriend was promptly apprehended, Elvik evaded law enforcement personnel for the next 14 hours. During that time, he hid the victim's handgun and money clip.

5. Elvik testified at trial that he later went back and retrieved the handgun because he "didn't want nobody to find it. I didn't want some little kid to find it, or shoot, you know, or anything like that."

6. Upon being detained, but prior to his arrest, Elvik gave a false name to the police. He later told them his actual name.

7. After being held, and given a Miranda warning, Elvik initially denied any recollection of the shooting. He stated that he had taken LSD and that this likely clouded his memory. Later in that interrogation, Elvik admitted to shooting the victim. At trial, Elvik stipulated that a blood test showed that he was not under the influence of LSD, and he testified that he had lied when he told the police otherwise.

8. During the same interrogation, Elvik asked whether his actions in Nevada would result in his confinement in a juvenile hall in Nevada or California. This showed sophistication about the link between where a crime is committed and the place of any resulting confinement.

9. During the same interrogation, Elvik stated that he had considered leaving the victim's handgun with Elvik's friend Stephen. He stated, "I didn't want to give it to [Stephen] because I guess he's like on probation for doing drugs or something. So I didn't want him to get in trouble for it but, you know?" He stated that he then

-4-

decided to give the gun to Stephen with the expectation that Stephen would "take it over to [Elvik's] mom's office or whatever or the police station or whatever he's going to do with it."

10. At the time of the shooting, Elvik was 14 years and 11 months old. Thus, within a month he no longer would have qualified for the instruction under Nev.Rev.Stat. § 194.010(2).

In my view, a consideration of the other evidence in the record, some of which is also mentioned by the majority, does not show that the totality of the evidence was "equally balanced" such that a judge could be in equipoise as to the issue of harmless error. Elvik relies on the following evidence to support his contrary position:

1. During his interrogation, he referred to his mother, who had disowned him and denied his request to return to her in California, by using a crude expletive;

2. He stated that he might not have a long life ahead of him because there might be "some big earthquake" and he might "fall in the crack and then [ ]die";

3. He answered some questions with "ah huh" instead of "yes" during his interrogation;

4. He did not surrender to the police because he was "scared" and did not "think anyone would believe" him, something consistent with the recognition that he knew that his conduct was wrongful;

5. During the interrogation, after being told that "everybody's going to know exactly what happened" and that this was Elvik's "chance to fill in, maybe, a couple of little minor details," Elvik asked "why does it matter, whatever I tell you?" However, in context, these words demonstrate that Elvik was asking why he needed to state what he had done given the evidence the police already had collected[1]; and

6. At the conclusion of the initial interrogation, Elvik asked if he would be sent to juvenile hall in Nevada or California. As stated above, this reflects sophistication. Moreover, even if this implied that Elvik misunderstood the

---

[1]After being asked to "fill in the little details" because the police "d[id]n't know exactly, you know, step by step what happened," Elvik asked, "Well, what does it matter anyway[?]" After being told that what happened was not "going to be a real big mystery," Elvik asked, "Yeah, I know, so why . . . why does it matter, whatever I tell you?" Elvik later stated, "Well . . . well, you obviously already know what happened, so what does it matter what I say?" Subsequently, after being told that his girlfriend had stated that Elvik told her that he shot the victim, Elvik responded, "It doesn't matter anyways." Later, after being asked whether the victim fell on his back or on his stomach after being shot, Elvik stated, "So, even if I do know, what is it . . . who cares?" After being told that things were "f* * * * * right now" and that they were "going to stay that way for awhile," Elvik asked, "So what's the difference if they're going to stay like that?"

seriousness of the punishment that might be imposed for killing the victim, it did not imply that he did not know that his conduct was wrongful.

To make the determination of "whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict" *Davis*, 135 S. Ct. at 2198 (internal quotation marks omitted) (quoting *O'Neal*, 513 U.S. at 436), it is necessary to consider the effect of the error in light of all the evidence presented to the jury. The question is not whether the jury was "right in their judgment" but is, instead, "what effect the error had or reasonably may be taken to have had upon the jury's decision." *Kotteakos v. United States*, 328 U.S. 750, 764 (1946). This analysis "must take account of what the error meant to [the jury], not singled out and standing alone, but in relation to all else that happened." *Id.* A conviction may not be overturned on "mere speculation that the defendant was prejudiced by trial error"; actual prejudice must be suffered. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998); *see also Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Thus, "[t]here must be more than a 'reasonable possibility' that the error was harmful." *Davis*, 135 S. Ct. at 2198 (quoting *Brecht*, 507 U.S. at 637). In assessing actual prejudice to the defendant, all relevant record evidence should be considered.

For these reasons, which are based on a review of the relevant record, I am not persuaded that Elvik suffered actual prejudice because the instruction that he requested was not read to the jury. Given the evidence at trial, I respectfully disagree that a reasonable jury could have concluded that Elvik did not understand the wrongfulness of his actions. That killing another person is wrongful is among the oldest and best established rules of civilization. As such, "[t]here is no basis for finding that [defendant] suffered actual prejudice . . . ." *Davis*, 135 S. Ct. at 2208.